**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SANTO CARRERO SILVA,                    16-cv-7609 (JGK)

                 Petitioner,                    OPINION AND ORDER

     - against -

WILLIAM KEYSER,

               Respondent.

---

**JOHN G. KOELTL, District Judge:**

The petitioner, Santo Carrero Silva, brings this pro se petition ("Petition") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. After a jury trial in the New York State Supreme Court, Bronx County, the petitioner was convicted of murder in the second degree in violation of N.Y. Penal Law § 125.25(1) and criminal possession of a weapon in the second degree in violation of N.Y. Penal Law § 265.03(1)(b). The petitioner argues that (1) the verdict was against the weight of the evidence because the prosecution failed to disprove the petitioner's justification defense beyond a reasonable doubt; (2) the trial court improperly admitted photographs of the victim's autopsy; (3) the prosecution presented improper argument during summation; (4) the petitioner's sentence of an aggregate term of twenty years to life is excessive; and (5) he received ineffective assistance of counsel at trial. For the

1

reasons explained below, the petition for a writ of habeas corpus is **denied**.

## I.

## A.

The record reflects the following relevant facts.

In March 2010, the petitioner and David Morales ("Morales") lived in separate units on the second floor of an apartment building located at 1488 Vyse Avenue in the Bronx, New York ("1488 Vyse"). See Transcript of Garcia Testimony ("Garcia Tr.") 121-24, 129.[1] Gloria Contreras ("Contreras"), who lived on the building's first floor, testified that in the early morning hours of March 21, 2010, she heard Morales tell the petitioner to turn off the music playing in the petitioner's apartment. See Contreras Tr. at 150, 153-55. Contreras allegedly heard the petitioner and Morales engage in a fistfight, and then heard the petitioner say "I'll be back," exit the building, and return ten minutes later. Id. at 154-55. Contreras testified at trial that after hearing a knock on Morales's door, she heard the petitioner demand that Morales exit his apartment. See id. at

---

[1] Citations to "Tr." refer to particular portions of the state court transcript. All citations to the trial transcript are preceded, when necessary, by the name of the individual who gave the cited testimony, or by the date on which the proceeding that is the subject of the transcript occurred.

155-57. She testified that she heard Morales exit and soon after heard a gunshot. See id.

Louie Garcia ("Garcia"), Morales's nephew, testified that he received two phone calls from Morales in the early morning hours of March 21, 2010. Garcia Tr. 125-26, 136-38. Garcia stated at trial that during the first phone call Morales told him about an altercation between him and the petitioner. See id. Garcia testified that when he received the second phone call from Morales he could only hear Morales's breath. See id. at 125-26. According to Garcia's testimony, Garcia then called Morales, but received no answer. See id. at 126. When Garcia called Morales a second time, an unidentified person allegedly answered the phone and explained to Garcia "what happened." Id. Garcia also testified that Morales's children "were hiding under the sheet in [Morales's] bed" when Garcia arrived at 1488 Vyse. Id. at 127.

Morales died soon after the confrontation. Smiddy Tr. 207-210; Brady Tr. 25. Dr. Monica Smiddy ("Dr. Smiddy") of the Office of the Chief Medical Examiner testified that Morales died from a gunshot wound, which gunshot entered the front of his chest and exited out of his back. Smiddy Tr. 204-08, 215.

The police arrived at 1488 Vyse on the morning of the altercation. Cabrera Tr. 21-22. The police found Morales's body in the second floor hallway next to a discharged bullet and an

3

eighteen-inch-long baseball bat. Pantoja Tr. 52, 63-66. They also found six live bullets in the petitioner's apartment. See id. at 63-65. The petitioner was arrested that morning and taken to the hospital for injuries sustained during the altercation. See Cabrera Tr. 18, 22-23.

That same day, in a statement discussed below, see infra I.B, the petitioner informed the police that he had placed a firearm in a sewer behind 1481 Vyse Avenue. See Brady Tr. 26-28. The police later recovered a partially loaded firearm from that location. See id. Detective Matthew Parlo of the Firearms Analysis Section testified that the discharged bullet found next to Morales's body was fired by that gun. See Parlo Tr. 235.

**B.**

While hospitalized, the petitioner provided four statements -- three to the police and one to an assistant district attorney.

On the evening of March 21, 2010, Detective Enrique Garcia provided the petitioner with two separate statements. See O'Neil Tr. 104-06, 111-13. Detective Garcia wrote these statements in English and read the statements to the petitioner in Spanish. See id. at 112. The petitioner signed the first statement at 7:15 p.m. (the "First Statement") and signed the second statement at 8:00 p.m. (the "Second Statement"). See O'Neil Tr. 111-113. The statements alleged that in the days preceding the

4

shooting the petitioner told Morales that Morales had to "stop selling drugs or [the petitioner would] tell the landlord." See id. at 112. The petitioner also alleged that he was assaulted and thrown down the stairs by Morales in their apartment building in the early morning hours of March 21, and soon after retreated outside to retrieve a weapon from "a little box in the back" of 1488 Vyse. Id. at 111-12. The petitioner asserted that when he returned to the building's second floor, he was attacked in the hallway by Morales with a "white object that looked like a knife." Id. at 112. The petitioner then "pulled the gun out and fired one shot" before leaving the building and hiding the gun "in the subway grating." Id. at 112-13.[2]

The petitioner provided a third statement orally to Detective Eddie Cabrera on the morning of March 23, 2010 (the "Third Statement"). See Cabrera Tr. 17-20. In this statement, the petitioner reiterated that Morales had been angry with the

---

[2] In his brief the petitioner addresses the contents of the statements holistically, treating the two as a single statement. See Pet'r's Br. in Supp. of Petition at 2-3. The State observes that the First Statement does not mention that the petitioner shot Morales. See Resp't's Opp'n Mem. at 4-5. Instead, the statement merely asserts that the petitioner was attacked by Morales on the second floor of 1488 Vyse, and that the petitioner fled the building and then returned to the building after the police had already arrived. See O'Neil Tr. at 111-12. It is only in the Second Statement that the petitioner acknowledges that he retrieved a weapon after his initial altercation with Morales and then shot Morales after allegedly being attacked by him. See id. at 112-13.

petitioner in the days preceding the altercation because the petitioner had told Morales to stop selling drugs at 1488 Vyse. See id. at 19. The petitioner also reasserted that Morales had attacked the petitioner with a knife on the morning of March 21. See id. In the Third Statement, the petitioner claimed that he retrieved the gun from his "room," rather than from the back of 1488 Vyse, and that he then shot Morales. Id.

The petitioner provided his final and most detailed statement later that same day to Assistant District Attorney Leah Takantzas (the "Fourth Statement"). See Takantzas Tr. 94–99.[3] In the statement, which was video-taped and played for the jury, the petitioner asserted that Morales had attacked him and threw him down a set of stairs at 1488 Vyse because the petitioner had threatened to tell their landlord that Morales was selling drugs in the building. See Pet't'r Br. in Supp. at 2; Resp't's Opp'n Mem. at 7. According to the statement, the petitioner then left the building to retrieve from a "small wood house" in the back of 1488 Vyse a firearm he had found years earlier. Pet't'r Br. in Supp. at 10; see also id. at 6. The petitioner claimed that he had not intended to use the firearm against Mr. Morales. See id. at 10. The petitioner then alleged

---

[3] The Court relies only on the undisputed description of the video statement from the petitioner's brief to the Appellate Division.

that he returned to the building and tried to enter his apartment so that he could call an ambulance and "take care of [his] wounds." Id. at 2-3, 10. At this moment, the petitioner claimed, Morales "attacked [the petitioner] from the back" with a weapon. Id. at 3. The petitioner asserted that there "was no chance to talk" and that he "fired a single bullet in self-defense." Id. The petitioner stated that he had aimed at Morales's leg. See id. at 12.

### C.

On April 9, 2010, a Bronx County grand jury returned an indictment charging the petitioner with one count each of murder in the second degree, manslaughter in the first degree, and possession of ammunition; and two counts of criminal possession of a weapon in the second degree. See Resp't's App. Div. Opp'n Br. at 2-3.

At trial, in addition to the statements set out above, see supra I.A, the prosecution introduced into evidence two photographs showing the entry and exit wounds in Morales's heart. See Smiddy Tr. 209-10. The photographs were offered in conjunction with testimony from Dr. Smiddy that the entry and exit wounds were of similar height within the heart, which cast into doubt the petitioner's assertion that he had aimed the firearm downward at Morales's leg. See id. at 196-210. The trial court admitted the photographs on the theory that they

7

corroborated Dr. Smiddy's testimony. Id. at 198-99. The prosecution also offered into evidence all four statements that the petitioner made following his arrest. See O'Neil Tr. 109-113 (First and Second Statements); Cabrera Tr. 17-20 (Third Statement); Takantzas Tr. 94-97 (video recording of the Fourth Statement).

The petitioner did not present any evidence. Tr. 246-47, 252. Instead, the defense sought to impeach Gloria Contreras on cross-examination. See Pet'r's App. Div. Br. at 20-23; Contreras Tr. 174-184. Defense counsel elicited from Contreras an admission that her direct examination was the first time that she had asserted that the initial altercation between the petitioner and Morales was because of music. See id. at 177-79.

In its summation, the prosecution argued that the petitioner killed Morales in part because the petitioner was frustrated with his living conditions. See Summation Tr. 32, 43. The State argued that the petitioner was motivated to kill Morales because the petitioner lived in a "hovel," and, to that end, the State had introduced photographic evidence during the trial of the petitioner's living arrangements. See id. at 32; see generally Pantoja Tr. 56-67 (introduction of various photographs taken of the scene).

On June 18, 2013, the jury found the petitioner guilty of one count of second degree murder and one count of second degree

criminal possession of a weapon, and not guilty of one count of criminal possession of a weapon in the second degree. See June 18 Tr. 92. On July 2, 2013, the court sentenced the petitioner to a term of imprisonment of twenty years to life for the second degree murder conviction and five years for the weapons charge, to run concurrently. See July 2 Tr. 16. The court also sentenced the petitioner to five years of post-release supervision on the weapons charge. See id.

## D.

The petitioner appealed his conviction to the Appellate Division, First Department, arguing that: (1) the verdict was against the weight of the evidence because the prosecution failed to disprove the justification defense beyond a reasonable doubt; (2) the trial court erred when it admitted the photographs of Morales's heart; (3) the prosecution engaged in various forms of misconduct during summation, including arguing a motive theory that had no evidentiary basis; (4) the sentence for the second degree murder conviction was excessive; and (5) defense counsel was "ineffective for failing to object or request curative instructions in response to both the prosecution's summation" and Garcia's testimony regarding Morales's children. See Pet'r's App. Div. Br. at 29-48, 49-53, 53-56, 60 n.170, 61-62.

In January 2016 the Appellate Division affirmed the petitioner's conviction. See People v. Silva, 22 N.Y.S.3d 834 (App. Div. 2016). The court held that there was "no basis for disturbing the jury's credibility determinations," noting that the petitioner's "justification defense was based entirely on his own statements, and his account . . . was generally contradicted by physical evidence." Id. at 834. The court found that the trial court properly admitted the autopsy photographs of Morales's heart, observing that the photographs were "highly probative in contradicting" the petitioner's justification defense and that "the probative value was not substantially outweighed by any prejudice resulting from the gruesome nature of the photos." Id. The court concluded further that the petitioner's prosecutorial misconduct argument was unpreserved. As an alternative holding, the court rejected the argument on its merits, finding that "any improprieties in the summation did not rise to the level of reversible error." Id. The court then concluded that there was "no basis for reducing the sentence," and rejected the petitioner's ineffective assistance of counsel claim. Id. at 834-35.

On February 3, 2016, the petitioner filed an application for leave to appeal to the New York Court of Appeals ("Court of Appeals"). Pet'r's Appl. for Leave at 1. Enclosed in the application was a copy of the Appellate Division briefs. Id. On

February 29, 2016, the petitioner filed a supplemental application for leave to appeal. Pet., Ex. C ("Pet'r's Suppl. Appl. for Leave") at 1. The petitioner argued that he should be able to establish ineffective assistance of counsel by demonstrating "appellate prejudice," in other words, that there is a "reasonable probability" that but for trial counsel's unreasonable failure to preserve an error for appeal, "the error would have required reversal." Pet'r's Suppl. Appl. for Leave at 8. The petitioner also argued in the alternative that his trial counsel "was ineffective under the state and federal constitutions." Id. at 13. The petitioner did not, in either application, press the other four claims set forth in his initial direct appeal.[4] See generally id.; Pet'r's Appl. for Leave. The Court of Appeals denied leave to appeal. People v. Silva, 63 N.E.3d 84 (N.Y. 2016).

## II.

The petitioner timely filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

---

[4] In his supplemental application for leave to appeal, the petitioner noted that he had argued to the Appellate Division that his conviction was against the weight of the evidence and that the prosecution engaged in misconduct during summation. Pet., Ex. C ("Pet'r's Suppl. Appl. for Leave") at 6. However, the petitioner did not renew those claims before the Court of Appeals. See generally id.

Section 2254 provides that "a district court shall
entertain an application for a writ of habeas corpus in behalf
of a person in custody pursuant to the judgment of a State court
only on the ground that he is in custody in violation of the
Constitution or laws or treaties of the United States." 28
U.S.C. § 2254. Moreover, the writ shall not be granted unless
the petitioner "has exhausted the remedies available" in state
court. 28 U.S.C. § 2254(b)(1)(A); see also Ramirez v. Att'y Gen.
of N.Y., 280 F.3d 87, 94 (2d Cir. 2001); Melendez v. LaValley,
942 F. Supp. 2d 419, 422 (S.D.N.Y. 2013). "The exhaustion
requirement is not satisfied unless . . . [the petitioner has]
informed the state court of both the factual and the legal
premises of the claim he asserts in federal court." Daye v.
Att'y Gen. of N.Y., 696 F.2d 186, 191 (2d Cir. 1982) (en banc).
The presentation of the claim to the state court "must have been
likely to alert the court to the claim's federal nature." Id. at
192. "References to attached [Appellate Division] briefs without
more will preserve issues only if the Court of Appeals is
clearly informed that the reference is asserting issues in those
briefs as bases for granting leave to appeal." Ramirez, 280 F.3d
at 97. Moreover, a district court may deny a claim on its merits
even if it has not been exhausted. 28 U.S.C. § 2254(b)(2) ("An
application for a writ of habeas corpus may be denied on the
merits, notwithstanding the failure of the applicant to exhaust

the remedies available in the courts of the State."); see also

Melendez, 942 F. Supp. 2d at 422-23.

Pursuant to the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), a federal court "shall not" grant habeas

corpus relief to a state prisoner on a claim that was

adjudicated on the merits in state court unless it concludes

that the state court's decision "was contrary to, or involved an

unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States" or "was

based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding." 28 U.S.C.

§ 2254(d)(1)-(2); see also Knowles v. Mirzayance, 556 U.S. 111,

114 (2009).

A state court decision is "contrary to" clearly established

federal law if "the state court arrives at a conclusion opposite

to that reached by [the Supreme Court] on a question of law" or

"if the state court confronts facts that are materially

indistinguishable from a relevant Supreme Court precedent and

arrives at a result opposite to" the result reached by the

Supreme Court. Williams v. Taylor, 529 U.S. 362, 405 (2000). A

state court decision involves "an unreasonable application of

. . . clearly established Federal law" when the state court

"correctly identifies the governing legal rule but applies it

unreasonably to the facts of a particular prisoner's case." Id.

at 407-08. In other words, "the state court decision [must] be more than incorrect or erroneous;" it "must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75 (2003). "[I]t is well established in [this] [C]ircuit that the objectively unreasonable standard of § 2254(d)(1) means that [a] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003) (citation and internal quotation marks omitted).

Because the petitioner is proceeding pro se, his petition is "read liberally and should be interpreted 'to raise the strongest arguments that [it] suggest[s].'" Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

### III.

### A.

The petitioner argues that his conviction was against the weight of the evidence because the prosecution failed to disprove his justification defense beyond a reasonable doubt. This claim is unexhausted and, in any event, is without merit.

A "weight of the evidence" claim is a purely state law claim and therefore not cognizable on habeas review. See Garrett v. Perlman, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006); see also Smith v. Lee, No. 10-cv-6941 (JGK), 2012 WL 5288742, at *3

(S.D.N.Y. Oct. 26, 2012). However, because the petitioner is proceeding pro se, the Court will construe the claim "as a [constitutional] claim that his conviction was based on legally insufficient evidence, which is a cognizable habeas corpus claim." Smith, 2012 WL 5288742, at *3.

Even so construing the claim, it is unexhausted because the petitioner's presentation of the claim to the Appellate Division was not likely to alert that court to the federal nature of the claim. See Daye, 696 F.2d at 192; Pet'r's App. Div. Br. at 29-48. And, even if the petitioner had presented the claim as a constitutional one to the Appellate Division, the claim would remain unexhausted because the petitioner's applications for leave to appeal to the Court of Appeals do not reference his Appellate Division brief in a manner that would "clearly inform[]" the Court of Appeals that the petitioner was "asserting [the] issue[] . . . as [a] bas[is] for granting leave to appeal." Ramirez, 280 F.3d at 97; see also supra I.D & n.4. Rather, the Appellate Division briefs were merely attached to the application for leave to appeal. The claim is therefore unexhausted.

The claim also fails on the merits. "A challenge to the sufficiency of the evidence must be rejected if 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements

15

of the crime beyond a reasonable doubt.'" Perlman, 438 F. Supp.

2d at 471 (quoting Jackson v. Virginia, 443 U.S. 307, 319

(1979)). "When considering the sufficiency of the evidence of a

state conviction, '[a] federal court must look to state law to

determine the elements of the crime.'" Id. (quoting Ponnapula v.

Spitzer, 297 F.3d 172, 179 (2d Cir. 2002)). The petitioner's

claim "face[s] a high bar," and the state court decision may

only be overturned if it was "objectively unreasonable." Coleman

v. Johnson, 132 S. Ct. 2060, 2062 (2012) (per curiam) (quoting

Renico v. Lett, 559 U.S. 766 (2010)). Therefore, this Court must

use a "doubly deferential standard of review" when considering

the petitioner's sufficiency challenge, deferring first to the

jury's verdict, and second to the state court's determination

under the standard set forth in 28 U.S.C. § 2254(d). Garbutt v.

Conway, 668 F.3d 79, 81 (2d Cir. 2012) (per curiam). Thus, the

writ should not be granted unless "no reasonable court could

have held that any reasonable jury could have read the evidence

to establish petitioner's guilt beyond a reasonable doubt." Id.

at 82; see also Nunez v. Conway, 923 F. Supp. 2d 557, 564-65

(S.D.N.Y. 2013).

Under New York law, the prosecution must disprove the

defense of justification beyond a reasonable doubt. N.Y. Penal

Law §§ 25.00(1), 35.00. New York law provides that a person may

not use deadly physical force against another unless that person

"reasonably believes that such other person is using or about to use deadly physical force."[5] Id. § 35.15(2)(a); see also Bonilla v. Lee, 35 F. Supp. 3d 551, 563 (S.D.N.Y. 2014). The justification defense consists of objective and subjective prongs: the defendant must subjectively believe that deadly physical force was necessary to defend himself against the imminent use of deadly physical force, and this belief must be objectively reasonable. See Bonilla, 35 F. Supp. 3d at 564 (collecting cases).

Viewing the evidence in the light most favorable to the State, the state court's conclusion that a reasonable jury could have found that the prosecution satisfied its burden to disprove the petitioner's justification defense beyond a reasonable doubt was not unreasonable. The State's evidence included (1) Contreras's testimony that the petitioner engaged Morales in a fistfight before exiting 1488 Vyse, returning, and confronting Morales in front of Morales's room; (2) Garcia's testimony corroborating the occurrence of the fistfight; (3) the petitioner's statements that he retrieved a firearm after his

---

[5] N.Y. Penal Law § 35.15(2)(a) provides that "the actor may not use deadly physical force if he or she knows that with complete personal safety, to oneself and others he or she may avoid the necessity of so doing by retreating." However, the trial court did not charge the duty-to-retreat. Pet'r's App. Div. Br. at 23. As such, the Court does not need to determine whether the petitioner had a duty to retreat.

first confrontation with Morales; and (4) evidence regarding the relative location of the entry and exit wounds in Morales's heart tending to show that the petitioner aimed his firearm at Morales's chest. See generally Contreras Tr. 153-57, 172-74; Garcia Tr. 125-28; O'Neil Tr. 111-13; Smiddy Tr. 204-08, 215.

The primary support for the petitioner's justification defense was the petitioner's statements made between March 21 and March 23, 2010. See Resp't's App. Div. Opp'n Br. at 10. These statements, however, contained inconsistencies, including that the petitioner initially failed to state that he shot Morales, and did not assert that he had done so in self-defense until the Second Statement. See O'Neil Tr. 111-13.

The petitioner calls attention to the shortcomings of Contreras's testimony. For example, despite claiming to have known the petitioner for seven years as of the date of trial, Contreras was unable to identify him in the courtroom and stated that she was not "familiar" with his voice. Contreras Tr. 152. The petitioner also notes that Contreras testified over three years after the incident. See Pet'r's App. Div. Br. at 23. Moreover, only several hours after the incident on March 21, 2010, Contreras allegedly told the police that she was "sleeping" at the time of the incident and did not hear nor see anything. Contreras Tr. 176-77. The prosecution conceded during

its summation that Contreras was "all over the place" during her testimony. Summation Tr. 35.

Notwithstanding the obvious weaknesses in Contreras's testimony, a habeas court "is not free to make credibility judgments about the testimony presented at the petitioner's trial." Torres v. Greene, 290 F. Supp. 2d 396, 400 (S.D.N.Y. 2003) (internal quotation marks omitted). Rather, "a conviction may be based upon circumstantial evidence and inferences based upon the evidence, and the jury is exclusively responsible for determining a witness' credibility." Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994) (quotation marks omitted). Because a rational juror could have found the petitioner's statements not credible and could have believed Contreras's account of the events, the determination of the state court that a rational juror could have found the petitioner guilty beyond a reasonable doubt is not unreasonable. See Torres, 290 F. Supp. 2d at 400.

### B.

The petitioner also argues that the trial court erred in admitting the two photographs of Morales's heart. The petitioner failed to exhaust this claim in state court and, in any event, it is without merit.

Although the petitioner argued to the Appellate Division that the trial court erred in admitting the photographic evidence, that claim was not raised as a federal constitutional

claim. See Pet'r's App. Div. Br. at 49-53. Rather, the claim was presented solely as an issue of state evidence law, although the petitioner cited federal cases for the balancing of prejudice against probative value. See id. at 50-53 (arguing that the trial court abused its discretion in admitting the photographs because it wrongly applied New York state law); Daye, 696 F.2d at 192. Even if the Court were to construe the claim as a constitutional claim, it would be unexhausted because the petitioner failed to raise it in his applications for leave to appeal to the Court of Appeals. See generally Pet'r's Appl. for Leave; Pet'r's Suppl. Appl. for Leave. Nor did the petitioner's applications reference his Appellate Division brief in a manner that would "clearly inform[]" the Court of Appeals that the petitioner was "asserting [the] issue[] . . . as [a] bas[is] for granting leave to appeal." Ramirez, 280 F.3d at 97. The petitioner has therefore failed to establish that he "has exhausted the remedies available" in state court. 28 U.S.C. § 2253(b)(1)(A).

The claim is meritless in any event. "Issues regarding the admissibility of evidence in state court concern matters of state law and are not subject to federal review unless the alleged errors are so prejudicial as to constitute fundamental unfairness." McCray v. Artuz, 93-cv-5757, 1994 WL 603057, at *2 (S.D.N.Y. Nov. 3, 1994) (Sand, J.). Thus, a petitioner seeking

habeas relief based on an erroneous evidentiary ruling bears the burden of establishing that the error was so pervasive that it denied the petitioner a fundamentally fair trial. See Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985); see also Nunez, 923 F. Supp. 2d at 568.

The petitioner has not met that burden. "Under New York law, 'photographs are admissible if they tend to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered.'" Lineberger v. Conway, No. 03-cv-1645 (KMW), 2008 WL 513203, at *8 (S.D.N.Y. Feb. 26, 2008) (quoting People v. Wood, 591 N.E.2d 1178, 1179 (N.Y. 1992)). "Photographic evidence should be excluded only if its sole purpose is to arouse the emotions of the jury and to prejudice the defendant." Sanchez v. Rock, No. 12-cv-1605 (JS), 2014 WL 3866456, at *7 (E.D.N.Y. Aug. 6, 2014) (quoting People v. Pobliner, 298 N.E.2d 637, 645 (N.Y. 1973)). The photographs were probative on the material issue of the credibility of the petitioner's defense of justification, which was predicated on his claim that he aimed the firearm at Morales's leg. See Pet'r's App. Div. Br. at 23-24, 49; Smiddy Tr. 209-211. They therefore tended to "disprove a disputed or material issue," and were thus properly admitted. Lineberger, 2008 WL 513203, at *8.

Furthermore, the admission of the photographs was not so material that it denied the petitioner a fair trial. "The erroneous admission of evidence rises to a deprivation of due process under the Fourteenth Amendment only if the evidence in question 'was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" Johnson v. Ross, 955 F.2d 178, 181 (2d Cir. 1992) (citing Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985)) (holding that admission of challenged evidence did not cause fundamental unfairness because "apart from the challenged evidence . . . , the prosecution presented highly probative evidence of [the defendant's] guilt"); see also Robles v. Senkowski, No. 97-cv-2798 (MGC), 2002 WL 441153, at *7 (S.D.N.Y. Mar. 21, 2002) (holding that admission of gory photographs of the victim did not cause fundamental unfairness when the prosecution presented other evidence to disprove the defendant's self-defense claim). The record contained significant additional evidence that tended to disprove the defendant's justification defense. Most significantly, the petitioner does not object to the testimony of Dr. Smiddy which accompanied the introduction of the photographs regarding the locations of entry and exit of the bullet. The jury also heard Contreras's testimony that she had heard the petitioner provoke the second confrontation, and evidence that the petitioner

retrieved a firearm after the first confrontation, from which
the jury could have concluded that the petitioner anticipated
engaging Morales in a second confrontation. See generally
Contreras Tr. 153-57, 172-74; Garcia Tr. 125-28; O'Neil Tr. 111-
13. Finally, the jury heard the inconsistencies in the
petitioner's statements. See O'Neil Tr. 111-13; Takantzas Tr.
99. In light of this evidence, the photographs were not
"sufficiently material . . . to remove a reasonable doubt that
would have existed on the record without it." Collins, 755 F.2d
at 19. Therefore, the introduction of the photographs did not
violate the petitioner's right to a fundamentally fair trial.

### c.

The petitioner claims that the prosecution engaged in
misconduct by presenting a motive theory in its summation that
had no evidentiary basis. This argument was not exhausted in the
state courts and is procedurally barred. The claim also fails on
the merits.

As with the petitioner's claim of evidentiary error, the
claim of prosecutorial misconduct was never raised to the
Appellate Division as a constitutional claim and is therefore
unexhausted. See Pet'r's App. Div. Br. at 53-56; See Daye, 696
F.2d at 192. The claim is also unexhausted because the
petitioner did not raise it in his applications for leave to
appeal to the Court of Appeals. See generally Pet'r's Appl. for

Leave; Pet'r's Suppl. Appl. for Leave. Moreover, although the petitioner's applications for leave to appeal attached his Appellate Division brief, they do not reference the brief in a manner that would "clearly inform[]" the Court of Appeals that the petitioner was "asserting [the] issue[] . . . as [a] bas[is] for granting leave to appeal." Ramirez, 280 F.3d at 97.

The claim also fails because it is procedurally barred by an independent and adequate state law ground. It is well-settled that when

> a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Lee v. Kemna, 534 U.S. 362, 375 (2002); Cotto, 331 F.3d at 238. To be considered an independent and adequate state ground, the state law must be "'firmly established and regularly followed' in the specific circumstances presented in the case." Cotto, 331 F.3d at 240 (citing Lee, 534 U.S. at 386-87). Although violations of such state rules normally preclude federal habeas review, there are "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop

consideration of a federal question." Lee, 534 U.S. at 376; see also Williams v. Artus, 691 F. Supp. 2d 515, 524 (S.D.N.Y. 2010).

To determine whether the application of a state rule is exorbitant, courts look to three factors:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

Cotto, 331 F.3d at 240 (quoting Lee, 534 U.S. at 381-85). The Appellate Division rejected the petitioner's prosecutorial misconduct claim as unpreserved, "implicitly relying on New York's preservation policy codified in New York Criminal Procedure Law . . . § 470.05(2)." See Ashley v. Burge, No. 05-cv-4497 (JGK), 2006 WL 3327589, at *4 (S.D.N.Y. Nov. 3, 2006). The Court of Appeals for the Second Circuit has acknowledged that New York's contemporaneous objection rule, on which the Appellate Division relied, is a firmly established, independent, and adequate state ground that bars habeas review of the merits of a constitutional claim. See Garcia v. Lewis, 188 F.3d 71, 78-79 (2d Cir. 1999); see also Williams, 691 F. Supp. 2d at 524.

The application of this rule by the Appellate Division was not exorbitant. In Garvey v. Duncan, 485 F.3d 709, 718-20 (2d Cir. 2007), the Court of Appeals for the Second Circuit employed the Cotto framework to determine whether the Appellate Division had exorbitantly applied § 470.05(2). In that case, the petitioner did not object at trial to the admission of identification evidence. Id. at 713. When the petitioner pressed the claim on appeal, the Appellate Division relied on § 470.05(2) and held that the claim was unpreserved. See id. In concluding that this application was not exorbitant, the Court of Appeals for the Second Circuit found that all three Cotto factors weighed against the petitioner. See id. at 718-720. In particular, the court found that it was "meaningless" to consider whether the trial court relied on the petitioner's procedural violation because a violation of § 470.05(2) "only first occur[s] when [a petitioner] raise[s] an argument on appeal that he had not raised earlier." Id. at 719. In considering the second factor, the court found that the specific circumstances of the trial demanded compliance with § 470.05(2) because the petitioner's failure to comply was not caused by a "sudden or unanticipated event." Id. Finally, the court found that demanding compliance with § 470.05(2) serves the legitimate government interest of "allowing the trial court to have the

first opportunity to rule on and possibly rectify any alleged legal error." Id. at 720.

Just as in Garvey, the application of § 470.05(2) by the Appellate Division in this case was not exorbitant. The trial court could not have relied on the petitioner's violation of § 470.05(2) because the violation did not occur until the petitioner urged the claim on appeal to the Appellate Division; there were no "sudden or unanticipated event[s]" that caused the petitioner's failure to comply with the rule. The petitioner's counsel could have objected during the prosecutor's summation or immediately after the conclusion of the summation. That would have provided the trial court the opportunity to consider the objection and give any curative instructions. Demanding compliance therefore serves a legitimate government interest. Id. at 719-20. Thus, there was an independent and adequate state ground for the Appellate Division to reject this argument, and habeas review of the prosecutorial misconduct claim is unavailable.

Moreover, the prosecutorial misconduct claim is without merit. To establish that a prosecutor's comments in summation amounted to a constitutional violation, a petitioner must show that the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1973); see also Gonzalez v.

Sullivan, 934 F.2d 419, 424 (2d Cir. 1991). "Prosecutorial misconduct during summation is grounds for reversal only when the remarks caused 'substantial prejudice' to the defendant." Gonzalez, 934 F.2d at 424. "In assessing whether prosecutorial misconduct caused 'substantial prejudice,' [the Court of Appeals for the Second Circuit] has adopted a three-part test: the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct." United States v. Elias, 285 F.3d 183, 190 (2d Cir. 2002) (quoting United States v. Shareef, 190 F.3d 71, 78 (2d Cir. 1999)).

Any misconduct on the part of the prosecutor was not severe. "In summation counsel are free to make arguments which may be reasonably inferred from the evidence presented." United States v. Roldan-Zapata, 916 F.2d 795, 807 (2d Cir. 1990). The petitioner appears to allege that the prosecutor engaged in misconduct by contending that the petitioner killed Morales because the petitioner was angry about his living conditions and his "life of insults." Pet'r's App. Div. Br. at 54. At trial, the prosecution introduced "photographic proof of [the petitioner's] living arrangements." See Resp't's App. Div. Opp'n Br. at 33; see generally Pantoja Tr. 56-67. Even if this evidence was not a sufficient basis for the challenged comments, thereby rendering them improper, any misconduct was not severe,

because the comments were "an aberration in an otherwise fair proceeding." See Elias, 285 F.3d at 191.

Moreover, because the petitioner did not object contemporaneously to the prosecutor's summation, the trial court did not have the opportunity to adopt any curative measures. See Silva, 22 N.Y.S.3d at 834 (noting that the petitioner's prosecutorial misconduct claim was unpreserved for review by the Appellate Division). Nor did the petitioner request any specific jury or limiting instructions in response to the challenged statements. Accordingly, the absence of curative measures does not weigh in favor of finding substantial prejudice. See United States v. Henry, No. 13-cr-91 (RRM), 2015 WL 861743, at *5 (E.D.N.Y. Feb. 27, 2015).

Most significantly, the petitioner has failed to establish that without the alleged misconduct, he would not have been convicted. See Elias, 285 F.3d at 192. The challenged remarks "did not touch upon or bolster the most potent of the government's evidence." See id. And when viewed in the context of the entire trial -- which included evidence that that the petitioner engaged Morales in a fight, retrieved a firearm, confronted Morales, shot Morales through the chest, and then gave conflicting statements about the course of events -- it is clear that the petitioner "would have been convicted even without" the challenged remarks. See id. The alleged misconduct

therefore did not result in substantial prejudice to the petitioner, precluding habeas relief.

**D.**

The petitioner also contends that his sentence of twenty years to life imprisonment is excessive. This claim is not exhausted, and is also meritless.

The petitioner's claim is unexhausted because, although it was raised to the Appellate Division, it was not presented in federal constitutional terms. See Pet'r's App. Div. Br. at 61-62; Daye, 696 F.2d at 192. Instead, the claim was presented solely as an issue of state sentencing law. See Pet'r's App. Div. Br. at 61-62 (citing Appellate Division cases in which sentences were reduced for defendants with characteristics allegedly similar to those of the petitioner); see also Bonilla, 35 F. Supp. 3d at 572 ("Although New York's Appellate Division has the power . . . to reduce a sentence in the interest of justice, a claim for a reduction in sentence . . . does not, without more, raise a federal constitutional issue."). Moreover, the claim was not raised in the petitioner's applications for leave to appeal to the Court of Appeals, nor did the applications reference his Appellate Division briefs in a manner that would "clearly inform[]" the Court of Appeals that he was asserting the sentencing issue as a basis for granting leave to appeal. Ramirez, 280 F.3d at 97. See generally Pet'r's Appl. for

Leave; Pet'r's Suppl. Appl. for Leave. The claim is therefore unexhausted.

The petitioner's claim that his sentence was excessive is also without merit. It is well-established that when a sentence falls within the range prescribed by state law, the length of the sentence generally may not be raised as a basis for federal habeas relief. See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law."); see also Baide-Ferrero v. Ercole, No. 06-cv-6961 (RJS), 2010 WL 1257615, at *4 (S.D.N.Y. Mar. 31, 2010) (collecting cases). The petitioner was convicted of one count of murder in the second degree in violation of N.Y. Penal Law § 125.25(1), a class A-I felony authorizing an indeterminate sentence of a minimum of 15 to 25 years and a maximum of life in prison. See Pet'r's App. Div. Br. at 1; N.Y. Penal Law §§ 125.25, 70.00(2)(a), (3)(a)(i). Because the sentence imposed by the trial court falls below the statutory maximum, his claim is not cognizable on habeas review.

The petitioner has also not shown that his sentence violates the Eighth Amendment's prohibition against "cruel and unusual punishments." That Amendment prohibits sentences that are "grossly disproportionate to the severity of the crime." Rummel v. Estelle, 445 U.S. 263, 271 (1980). Rummel has been

interpreted as having held that "federal courts should be reluctan[t] to review legislatively mandated terms of imprisonment, and that successful challenges to the proportionality of particular sentences should be exceedingly rare." United States v. Santos, 64 F.3d 41, 45 (2d Cir. 1995) (citation omitted), vacated on other grounds, 516 U.S. 1156 (1996); see also Melendez, 942 F. Supp. 2d at 424. The petitioner's sentence of twenty years to life, which fell below the statutory maximum, is not grossly disproportionate to a conviction for intentional homicide. See Boyce v. Bradt, No. 09-cv-2832 (DLI), 2012 WL 3764038, at *12 (E.D.N.Y. Aug. 29, 2012) (finding that the petitioner's sentence of twenty-five years to life for murder in the second degree was not disproportionate).

**E.**

Finally, the petitioner contends that his trial counsel was ineffective for failing to: (1) object to "the prosecution's summation;" (2) request curative instructions in response to the summation;[6] (3) object to Garcia's testimony relating to Morales's children; and (4) request curative instructions in

---

[6] Although the petitioner does not identify which parts of the prosecution's summation are at issue, in light of the petitioner's prosecutorial misconduct argument, the Court presumes that the petitioner is challenging the prosecution's claims that the petitioner lived in a "hovel" and led a "life of insults." Pet'r's App. Div. Br. at 54 (citation omitted); Summation Tr. 32.

response to Garcia's testimony relating to Morales's children.[7] Because the state court's conclusion that the petitioner failed to establish ineffective assistance of counsel is not unreasonable, the petitioner is not entitled to relief.

The petitioner's ineffective assistance of counsel claims are exhausted because they were raised to both the Appellate Division and the Court of Appeals in federal constitutional terms. In his Appellate Division brief, the petitioner argued that the performance of his trial counsel fell below the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984), and in his supplemental application for leave to appeal the petitioner renewed the argument that "counsel was ineffective under the . . . federal constitution[]." See Pet'r's App. Div. Br. at 60 n.170; Pet'r's Suppl. Appl. for Leave at 13.

Nevertheless, the claims are without merit. Claims of ineffective assistance of counsel are evaluated under the two-part test set forth in Strickland. To establish ineffective assistance, the petitioner must show both that (1) his counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the

---

[7] The petitioner does not expressly press any of these four arguments in the Petition. Instead, these arguments appear in a footnote to his Appellate Division Brief. Pet'r's App. Div. Br. at 60 n.170. Because the petitioner appended his Appellate Division Brief to the Petition, the Court will analyze these claims as if they were expressly raised.

time, and that (2) counsel's deficient performance was prejudicial to the petitioner's case. See Strickland, 466 U.S. at 687-88; Gersten v. Sankowski, 426 F.3d 588, 607 (2d Cir. 2005).

In order to meet the first prong under Strickland, the petitioner must establish that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." LanFranco v. Murray, 313 F.3d 112, 118 (2d Cir. 2002) (quoting Strickland, 466 U.S. at 687); see also Hernandez v. United States, 280 F. Supp. 2d 118, 122 (S.D.N.Y. 2003). There is a "strong presumption" that the defense counsel's conduct fell within the broad spectrum of reasonable professional assistance, and a defendant has the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." Kimmelman v. Morrison, 477 U.S. 365, 381 (1985) (citing Strickland, 466 U.S. at 688-89).

To satisfy the second prong, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see Gersten, 426 F.3d at 607.

"Because both the Strickland standard and AEDPA provide for deferential subsequent review, it is a 'doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard.'" Harnett v. Conway, No. 08-cv-1061 (JPO), 2014 WL 6390285, at *6 (S.D.N.Y. Nov. 17, 2014) (quoting Knowles, 556 U.S. at 123). That is, in order to afford relief, the Court must find that the conclusion of the Appellate Division that the petitioner failed to establish ineffective assistance of counsel under the deferential Strickland standard was an unreasonable application of federal law.

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697. Even assuming that the petitioner's trial counsel was deficient in failing to object to either the prosecution's summation or to Garcia's testimony regarding Morales's children, or for failing to request relevant curative instructions, the petitioner failed to establish that, but for those errors, "the result of the proceeding would have been different." Id. at 694. In light of the strength of the prosecution's case and the relatively insignificant nature of the allegedly improper testimony and argument, the state court's conclusion that the petitioner failed to establish Strickland prejudice was not an unreasonable application of federal law.

The petitioner is therefore not entitled to habeas relief on these grounds.[8]

---

[8] In his supplemental application for leave to appeal to the Court of Appeals for the Second Circuit, the petitioner argues that his trial counsel's failure to object to the prosecutor's statements and to testimony about Morales's children rendered trial counsel's assistance ineffective because the failures caused the petitioner "appellate prejudice," that is, that there is a "reasonable probability" that but for trial counsel's failure to preserve these grounds for appeal, the Appellate Division would have reversed the petitioner's conviction as a matter of law. See Pet'r's Suppl. Appl. for Leave at 8. This claim is without merit because the only claim that the Appellate Division rejected as unpreserved was the claim related to the prosecutor's summation and the Appellate Division, in an alternative holding, rejected the petitioner's claims of prosecutorial misconduct. See Silva, 22 N.Y.S.3d at 834. Therefore, to the extent that this claim differs from the petitioner's other ineffective assistance of counsel claims, it is without merit. The petitioner suffered no "appellate prejudice" from his trial counsel's failure to object to the prosecutor's summation. See Pet'r's Suppl. Appl. for Leave at 8.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained above, Silva's petition is **denied.** The Clerk is directed to enter judgment and to close this case. The Court declines to issue a certificate of appealability because the petitioner has failed to make a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c).

**SO ORDERED.**

**Dated:     New York, New York**
**          September 25, 2017**

_____
John G. Koeltl
**United States District Judge**